MARGARET A. MYERS *v.* H. M. JAMES *et als.*

1. MARRIED WOMAN. *Separate estate. Mortgage.* Under a settlement of realty on a married woman to her sole and separate use, " with power to sell, lease or mortgage all or any part of said property by deed or other instrument, by her alone, or in her own name executed, and to hold the proceeds arising from any such sale, or mortgage, or letting of the property, either real or personal, purchased with the same," the married woman may execute with her husband a valid conveyance to a trustee in trust to secure a contractor the consideration agreed upon for the erection of improvements on the property.

2. TRUSTEE. *Sale of real estate. Cannot be made. When.* A trustee's sale of realty in satisfaction of the trust debt to the creditor under a deed waiving the equity of redemption, cannot be sustained when made pending a litigation by the debtor to test the validity of the deed and ascertain the true amount of the debt, the sale being had upon the dissolution of an injunction granted on the filing of the bill, the order of dissolution directing a mode of sale, and that only so much of the property be sold as might be necessary to pay the debt as set forth in the creditor's answer, and without prejudice to the debtor's rights on

Myers v. James.

final hearing, the Supreme Court having superseded so much of the order as directed the mode of sale, and the debt on final hearing having been found to be less than the amount claimed by the creditor in his answer and at the sale.

FROM SHELBY.

Appeal from Second Chancery Court at Memphis. S. P. WALKER, Ch.

L. W. FINLAY and GANTT & PATTERSON for complainant.

E. M. HEARN, J. M. GREGORY and McKISICK & TURLEY for defendants.

COOPER, J., delivered the opinion of the court.

By a decree in the chancery court of the 23d of January, 1866, certain real estate on the corner of DeSoto and Beal streets, in the city of Memphis, was settled upon the complainant, Margaret A. Myers, "to her sole and separate use, free from the debts, liabilities and control of Bernard Myers, her present, or any future husband she may have, with power to sell, lease or mortgage all or any part of the said property, by deed or other instrument, by her alone or in her own name executed, and to hold the proceeds arising from any such sale or mortgage, or letting of the property, either real or personal, purchased with the same."

On the 13th of October, 1871, Myers and his wife entered into a contract in writing with the defendant, H. M. James, for the erection by the latter of two houses on the lot nearest the corner of Beal and De-

Soto streets, known in the pleading as houses Nos. 1 and 2, for the consideration of $5,400, afterward increased by some extra work to $5,550.

This obligation concluded thus: " B. and M. A. Myers bind and obligate themselves to pay as above stipulated, and the said M. A. Myers, as the building is to be placed upon a lot of her ground, which she owns in her individual right, and that she has the power to sell and bind by lien, mortgage, or otherwise, as a *feme sole,* it is thereupon expressly understood that her individual and separate estate is bound for the payment of the consideration hereinbefore named, and that a lien is hereby retained for said money."

On the 2d of November, 1871, a similar contract in parol was entered into between the same parties for the erection of two other houses on the same lot, known in the pleading as Nos. 3 and 4 for the consideration of $5,920, secured by two notes of Myers and wife, due 25th of December, 1872 and 1873, respectively, and further secured by a conveyance of Myers and wife of the entire lot to E. M. Hearn, trustee, with power of sale if the notes were not paid at maturity, for cash, free from the equity of redemption.

The consideration for the first two houses having been paid except the sum of $1,547.25, Myers and wife, on the 11th of April, 1872, conveyed the same property to the same trustee, with like power of sale, in trust to secure a note for $2,260, executed by Myers and wife to James for the unpaid consideration due on the first contract and other items of money advanced by James to the husband.

Payments were afterward made on the notes thus secured, but the trustee being about to execute the trust deeds, Margaret A. Myers, the wife, by next friend, on the 11th of December, 1873, filed her original bill in this case against James, the trustee, and her husband and enjoined the sale.

In this bill she sets out the foregoing facts substantially, expressly stating that the contracts were made with defendant James by her husband, acting for her, and that she joined in the notes and conveyances.

The original contract of the 13th of October, 1871, and the trust deeds, were authenticated by the acknowledgment of the husband and wife, the privy examination of the latter being in each instance taken in due form of law, and registered.

Upon the answer of James to this bill the court dissolved the injunction granted against the selling of the land by the trustee, but in view of the fact that the complainant asked and the defendant assented thereto in the pleadings, the court directed the houses to be sold in a certain order separately, and that only so much of the property be sold as might be necessary to pay the debts of James as "set forth in his answer."

"This order," it is added, "is made without prejudice to the rights of the complainant on the hearing."

So much of this order as directed the trustee "as to the mode and order of making sale of the property," was, upon the petition of the complainant, superseded by one of the judges of this court under the Code, sec. 3933.

Myers *v.* James.

On the 26th of April, 1874, the trustee sold each of the houses separately to the defendant, he being the only bidder, at $1,500 each, in all $6,000, and credited the bid, less the cost of sale, on the debt.

On the 26th of May, 1874, an amended bill was filed, setting up additional payments claimed to have been made, one of which, for $101, was admitted by James, and reiterating in somewhat stronger language the grounds of relief of the original bill.

On the 18th of December, 1874, the defendant, James, filed a cross-bill claiming the benefit of the purchase, but seeking, in the event the court should be of opinion that the trust deeds were not within the terms of the power given to the complainant by the decree settling the property upon her, to hold the property liable upon the agreement or contract of building, by which the complainant had undertaken expressly to bind her separate estate for the debt.

Such proceedings were had under the original and cross-causes that issues of fact were submitted to a jury, who found, in substance, that the balance due to James upon the building contracts, on the 26th of April, 1874, when the trustee sold, was $5,990, and that the money advanced by James to the husband was intended to be used in the improvement of the property, but was in fact not so used.

The findings of fact by the jury are conclusive, but their opinion that a particular loan is a proper charge on the separate estate, is not binding on the court.

The Chancellor rendered a decree in favor of James

for the amount of the notes secured after deducting credits found by the jury, with interest, and held the sale made by the trustee valid. The complainant took a bill of exceptions, and has appealed in error.

The jury found that the buildings were constructed according to contract, except to an insignificant extent, for which they allowed $40, and there is nothing to show that the contracts were not made fairly, and upon reasonable terms, under the circumstances. The finding of the balance due under the contract is conclusive.

The power given to the complainant by the decree of settlement "to sell, lease, or mortgage all or any part of the said property, by deed or other instrument, by her alone or in her own name executed, and to hold the proceeds," unquestionably gave her authority to mortgage for the purpose of raising money to improve the property, that being a purpose clearly within the settlement. And it would be too strict and technical a construction to say that while she might mortgage to raise the money to accomplish that end, she could not mortgage directly for that purpose. What was done was, in substance, an advance of money by the defendant on the faith of the security of the property to build the houses. The mortgage "by deed or other instrument" fairly implies that a strict common law mortgage was not alone intended. Any form of instrument which would in effect operate as a pledge of the property for money advanced for the purpose of the settlement, would be clearly within the language used.

And this court has held that a bank, authorized by its charter to hold land "mortgaged" to it by way of security, might take land conveyed to a trustee for its benefit by way of security. *Bennett* v. *Union Bank*, 5 Hum., 612. So the court has plainly intimated that a power to an agent to "mortgage" would sustain a conveyance in trust for the object of the mortgage. *Gimell* v. *Adams*, 11 Hum., 284.

Nor is there anything in the point that the power requires the execution of an instrument by the beneficiary alone, and that the joinder of the husband in the deeds vitiates them. This would be to turn the letter to the destruction of the spirit. What the settlement meant was, that even if the husband objected and refused to join in the usual mode required by law for the conveyance of realty by *femes covert*, the complainant might nevertheless sell, mortgage or lease. The fact that the husband has joined her in these deeds, instead of vitiating, does away with all suspicion that they have not been fairly entered into with the concurrence of her natural trustee and protector.

The original bill admits that the husband acted in these transactions as the agent of the wife, and the deeds are undoubtedly valid and binding on complainant to the extent of the debt secured, which went to the improvement or direct benefit of the property.

Any part of that debt created by the husband alone would not fall within the power, and cannot be charged on the property unless shown to have been used in the improvement of the land with the consent of the

wife.. The sale by the trustee cannot, however, be sustained.

The injunction was not dissolved simply, but dissolved by an order directing the mode of making sale, limiting the sale by the amount of James's debt, "as set .forth in his answer," and "without prejudice to the rights of the complainant on the hearing." Part of this order was suspended by this court, and *non constat* that the Chancellor would have dissolved the injunction except upon the imposition of these terms. Besides, the dissolution is to be "without prejudice" to complainant's rights on the hearing.

If this means anything, it must be that if it shall turn out on final hearing that the defendant's debt,. "as set forth in his answer," is not correct, then the sale either cannot be made at all, or if made, must be at the peril of the trustee and the beneficiary. For the equity of redemption is waived by the deeds, and therefore the complainant was entitled to know the exact amount of the debt with a view to redemption in advance. If, under the circumstances, the creditor demands more than he is justly entitled to, and the trustee act upon the correctness of the demand, and it turn out in the suit then pending that the amount of the demand was greater than the truth warranted, it would be a fraud on the debtor, against which the debtor would be entitled to relief. What the relief would be, if a third person in good faith became the purchaser of the property, we need not now determine.

Here the creditor is the purchaser, being the only

Myers *v.* James.

bidder, with full notice that his sale was to be without prejudice to the rights of the debtor, and that the form of the order of dissolution, modified by the *supersedeas* of this court, threw such a cloud over the title of the debtor that third persons were restrained from bidding. It was not a sound exercise of discretion on the part of the trustee to sell under such circumstances. The jury have found that the secured debt was much smaller than they supposed and the creditor claimed.

The rights of the parties will be declared in accordance with this opinion, the sale set aside, and a re-sale ordered to satisfy any balance of debt after deducting the net fund in the hands of the receiver arising from the rents of the property, which will be paid in satisfaction of so much of the mortgage debt. The defendant is only entitled to recover of the complainant, not personally, but out of the complainant's said separate property, the balance due on the debts created for the improvement or benefit of the trust property as found by the jury, less the $40 allowed for deficiency, with interest according to contract. The $500 advanced by James to the husband cannot be charged on the property, nor can any other advances, not shown to have been actually used in the improvement of the property. The costs of the trust sale and of this court will be paid by defendant James, and the residue of the costs out of the money in the hands of the receiver. Reasonable time, say sixty days, will be given, after ascertaining the balance of the debt, to pay before sale.

Upon motion by complainant to remand the cause, COOPER, J., delivered the opinion of the court.

There is no ground for going behind the verdict of the jury finding the amount of the complainant's indebtedness to the defendant, James, in accordance with the terms of the original contracts. The instruments which create the debt, within the meaning of the statute authorizing a conventional rate of interest, are the mortgages, and the rate found by the jury is correct. The defendant, James, is entitled to receive the sum of $5,990, less the deduction of $40 for deficiency of work, with interest from the date of the trustee's sale to the present time, at the rate of ten per cent. per annum, and to a decree for the appropriation of the net balance of funds in the receiver's hands to the satisfaction of the debt, and a sale of the land for the residue unless paid within sixty days after the credit.

It will be referred to the clerk of this court to take and state an account with the receiver, in which he will charge him with all sums received, or which might have been received, with due diligence, and allow all just credits, including reasonable compensation.

There is no necessity of remanding the cause.